UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 18- 14243- CV-ROSENBERG
MAGISTRATE JUDGE REID

ROBERT LEE KENON, JR.,

      Petitioner,

v.

JULIE JONES,[1]

      Respondent.

_____/

## REPORT OF MAGISTRATE JUDGE

The *pro se* Petitioner, **Robert Lee Kenon, Jr.**, has filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his conviction and sentence, entered following a jury trial in Case Number **562007CF001604A** in the Nineteenth Judicial Circuit Court of Florida, St. Lucie County.

This Cause has been referred to the Undersigned for consideration and report, pursuant to 28 U.S.C. § 636(b)(1)(B), (C); S.D. Fla. Admin. Order 2019-02; and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States

---

[1] Julie Jones is no longer the Secretary of the Department of Corrections. Mark S. Inch is now the proper respondent in this proceeding; and, therefore, should be "automatically" substituted as a party under Federal Rules of Civil Procedure 25(d)(1). The Clerk is directed to docket and change the designation of the Respondent.

District Courts.

For its consideration of the petition [ECF No. 1] the Court has received the state's response to this Court's order to show cause, along with a supporting appendix [ECF Nos. 9, 10, 11].

Construing the arguments liberally as afforded *pro se* litigants, pursuant to *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), Petitioner raises the following grounds:

> **Claim 1**: The trial court erred by allowing a nurse to testify that the alleged victim's emotional state was consistent with that of other rape victims. [ECF No. 1 at 5].

> **Claim 2**: The trial court erred by excluding evidence that the alleged victim was a prostitute. [*Id*. at 6].

> **Claim 3**: Trial counsel was ineffective in failing to object to the nurse's testimony regarding the victim's emotional state. [*Id*. at 7].

> **Claim 4**: Trial counsel was ineffective in failing to investigate and present evidence to support the Petitioner's version of events. [*Id*. at 9-10].

> **Claim 5**: Trial counsel was ineffective in misadvising Petitioner to decline his right to testify in his own defense. [*Id*. at 12-14].

After reviewing the pleadings, for the reasons stated in this Report, the Undersigned recommends that the petition be denied on the merits.

## II. Factual and Procedural History

### Information and Trial

On April 18, 2007, the state charged Petitioner by information with (Count 1)

kidnapping with a weapon or firearm, in violation of Fla. Stat. § 787.01 and (Count 2) sexual battery by force, in violation of Fla. Stat. § 794.011(3). [ECF No. 10-1, Ex. 1].

Petitioner proceeded to trial. [ECF No. 11, Trial Transcript]. The victim, M.M., testified that on December 22, 2005, she was walking from her sister's house to the store when a car drove by, while the driver looked at her. [T. 201-03]. The victim subsequently identified the driver as the Petitioner in a photo line-up and in court. [T. 228-30]. She described the assailant as a black man with big muscles, no hair, and a tattoo on his arm. [T. 223].

Petitioner turned the car around and started following her. [*Id.*]. Petitioner blocked her path with his car, pointed a gun at her, and screamed at her to get in the car. [T. 204-05]. She had never seen Petitioner before this incident. [T. 204]. M.M. ran toward an apartment building to get help, but no one came to her aid. [T. 206]. She tried to hide under a van, but Petitioner grabbed her hair, pointed a gun at her, and forced her into his car. [T. 206-07].

Petitioner drove to a secluded area. [T. 212]. Petitioner forced her to take off her pants, touched her breasts and vagina, forced her to perform oral sex on him, and put his penis inside her vagina. [T. 213-14]. He pointed a gun at her head throughout the incident. [T. 218-19]. The victim cried and screamed because she wanted to run away. [T. 214].

3

Afterwards, Petitioner drove back to the road, opened the car door, and told her to get out. [T. 221]. As she started to exit the car, he pushed her to the ground. [T. 222]. The victim saw someone she knew, Arnulfo "Freddy" Cruz Lemus, and called for help. [*Id.*]. He took her to the hospital. [T. 229].

Freddy testified that on December 22, 2005, he was walking to the store when he saw M.M. in a four-door silver car. [T. 252]. When he walked towards the car, it took off. [T. 253]. Freddy ran after the car and tried to write down the plate number, but the driver turned off the lights. [T. 253]. He came across the car later. [T. 254]. The victim was crying as she exited the car. [*Id.*].

Gus Young testified that, on December 22, 2005, he saw a grey car with tinted windows pull up alongside a woman and block her path. [T. 187, 191]. The woman ran away into a nearby yard toward a house. [T. 187]. The people in the house did not let her inside. [*Id.*]. The woman started running and the driver of the car grabbed her around the neck and shoved her into his car. [T. 187-88]. He was a large, bald, black male and was holding a large silver gun. [T. 188]. Petitioner's wife testified that in December 2005 she owned a silver, four-door Lincoln LS that her husband routinely drove. [T. 313-14].

Audry Stabile testified that she was the attending nurse when the victim arrived at the hospital following the sexual battery. [T. 282-83]. Over defense counsel's objection, Nurse Stabile testified that the victim's emotional state was

consistent with other patients she had previously examined who had claimed to be victims of sexual assault. [T. 286]. Nurse Stabile conducted a sexual assault examination and collected swabs for further testing. [T. 287]. There was not a sufficient sample from the victim to conduct a DNA comparison. [T. 341].

The state called several law enforcement officers to testify regarding the investigation into the crime. [T. 256-72, 301-06, 317-18, 339-45, 370-72]. After the state rested, the defense did not call any witnesses. [T. 372].

**Verdict, Sentencing and Direct Appeal**

The jury found Petitioner guilty of both counts as charged in the information. [ECF No. 10-1, Ex. 2; T. 461]. The trial court sentenced Petitioner to two life terms, set to run concurrently. [ECF No. 10-1, Ex. 3]. Petitioner appealed to Florida's Fourth District Court of Appeal ("Fourth DCA"). [ECF No. 10-1, Ex. 4]. Petitioner argued that the trial court erred by allowing a nurse to testify that the alleged victim's emotional state was consistent with that of other rape victims and by excluding evidence that the alleged victim was a prostitute. [*Id.*]. Here, Petitioner raises the same claims under Claims 1 and 2. [ECF No. 1 at 5-6]. On November 10, 2010, the Fourth DCA *per curiam* affirmed without written opinion. *Kenon v. State*, 48 So. 3d 64 (Fla. 4th DCA 2010).

**Rule 3.850 Post-Conviction Motion**

Petitioner, represented by counsel, filed a motion for post-conviction relief

pursuant to Fla. R. Crim. P. 3.850 along with a motion for leave to amend, [ECF No. 10-1, Ex. 7], followed by a second amended motion for post-conviction relief. [ECF No. 10-1, Ex. 10]. Petitioner argued that trial counsel was ineffective for failing to object to the nurse's testimony regarding the victim's emotional state and for failing to investigate and present evidence to support the Petitioner's version of events. [*Id.*]. Petitioner raises these same claims as Claims 3 and 4 in this case. *See* [ECF No. 1 at 7-10].

Petitioner's counsel subsequently filed a motion to withdraw, which the court granted. [ECF No. 10-1, Exs. 9, 11]. The state filed a response with supporting exhibits. [ECF No. 10-1, Ex. 13]. The trial court issued an order summarily denying the motion and incorporating the state's response and exhibits. [ECF No. 10-1, Ex. 14]. The trial court also denied Petitioner's motion for rehearing. [ECF No. 10-1, Ex. 15].

Petitioner appealed to the Fourth DCA. [ECF No. 10-1, Ex. 16]. In his *pro se* brief, Petitioner argued that the trial court erred in denying both claims raised in his Rule 3.850 motion. [*Id.*]. The Fourth DCA *per curiam* affirmed without written opinion. *Kenon v. State*, 245 So. 3d 739 (Fla. 4th DCA 2018). The Fourth DCA subsequently denied Petitioner's motion for rehearing. [ECF No. 10-1, Ex. 18]. The Fourth DCA issued its mandate on June 29, 2018. [*Id.*].

### 28 U.S.C. § 2254 Petition

Petitioner filed this§ 2254 petition on June 18, 2018. [ECF No. 1 at 15]. The state filed a response to the Court's order to show cause, with supporting exhibits. [ECF Nos. 9, 10, 11]. The state concedes that the petition is timely. [ECF No. 9 at 6-8]. The state argues that Petitioner failed to exhaust Claim 5 [*Id.* at 8-16], but addresses the merits of each substantive claim. [*Id.* at 16-65].

### III. Threshold Issues

### Exhaustion

The state argues that **Claim 5** is unexhausted and procedurally defaulted from federal habeas review because Petitioner failed to raise this issue in state court. [ECF No. 9 at 89-16].

Pursuant to 28 U.S.C. § 2254(b)-(c), petitioners must exhaust their claims before presenting them in a federal habeas petition. When petitioners do not properly present their claims to a state court by exhausting those claims and complying with the applicable state procedure, § 2254 may bar federal review of those claims in federal court. *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (relying upon 28 U.S.C. § 2254(b)-(c)). When it is unclear or less efficient to resolve whether the additional restriction in § 2254(d) applies, federal courts may also deny writs of habeas corpus under § 2254 by engaging in *de novo* review, a more favorable standard, as a habeas petitioner would surely not be entitled to a writ under § 2254(d) if the claim would fail under *de novo* review. *See, e.g.*, *Berghuis v. Thompkins*, 560

7

U.S. 370, 390 (2010); *Hittson v. GDCP Warden*, 759 F.3d 1210, 1248 (11th Cir. 2014); *Trepal v. Sec'y, Fla. Dep't of Corr.*, 684 F.3d 1088, 1109-10 (11th Cir. 2012).

Although Claim 5 is unexhausted, pursuant to 28 U.S.C. § 2254(b)(2), the Court has authority to address unexhausted claims when a denial is appropriate on the merits. *See also Berguis v. Thompkins*, 560 U.S. 370, 390 (2010). To promote judicial efficiency, the merits of the allegedly unexhausted claim is also addressed.

### IV. Governing Legal Principles

This Court's review of a state prisoner's federal petition for habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996). "The purpose of [the] AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Ledford v. Warden, GDCP*, 818 F.3d 600, 642 (11th Cir. 2016) (quoting *Greene v. Fisher*, 565 U.S. 34, 38 (2011)). In fact, federal habeas corpus review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" *Id.* at 642 (quoting *Hill v. Humphrey*, 662 F.3d 1335, 1343 (11th Cir. 2011)), and is generally limited to the record that was before the state court that adjudicated the claim on the merits. *See Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).

The federal habeas court is first tasked with identifying the last state court decision, if any, that adjudicated the claim on the merits. *See Marshall v. Sec'y, Fla.*

*Dep't of Corr.*, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court is not required to issue an opinion explaining its rationale, because even the summary rejection of a claim, without explanation, qualifies as an adjudication on the merits which warrants deference. *See Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). *See also Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018); *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018).

Where the claim was "adjudicated on the merits" in the state forum, § 2254(d) prohibits relitigation of the claim unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law,[2] as determined by the Supreme Court of the United States;" or, (2) "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); *Harrington*, 562 U.S. at 97-98. *See also Williams v. Taylor*, 529 U.S. 362, 413 (2000). When relying on § 2254(d)(2), a federal court can grant relief if the state court rendered an erroneous factual determination. *Tharpe v. Warden*, 834 F.3d 1323, 1337 (11th Cir. 2016).

Because the "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court," *Burt v. Titlow*, 571

---

[2]"Clearly established Federal law" consists of the governing legal principles, rather than the dicta, set forth in the decisions of the Supreme Court at the time the state court issues its decision. *White v. Woodall*, 572 U.S. 415, 419 (2014); *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

U.S. 12, 20 (2013), federal courts may "grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" *Tharpe*, 834 F.3d at 1338 (11th Cir. 2016) (quoting *Harrington*, 562 U.S. at 102). This standard is intentionally difficult to meet. *Harrington*, 562 U.S. at 102.

Petitioner alleges ineffective assistance of counsel. The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the assistance of counsel during criminal proceedings against them. *Strickland v. Washington*, 466 U.S. 668, 684–85 (1984). When assessing counsel's performance under *Strickland*, the court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

To prevail on a claim of ineffective assistance of counsel, Petitioner must demonstrate that: (1) his or her counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness; and, (2) he or she suffered prejudice as a result of that deficiency. *Strickland*, 466 U.S. at 687-88.

To establish deficient performance, Petitioner must show that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. *Strickland, supra. See also Cummings v. Sec'y for Dep't of Corr.*, 588 F.3d 1331, 1356 (11th Cir. 2009). The review of counsel's performance should focus

on "not what is possible or what is prudent or appropriate but only [on] what is constitutionally compelled." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Regarding the prejudice component, the Supreme Court has explained "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs. *Id.* at 697. Further, counsel is not ineffective for failing to raise non-meritorious issues. *Chandler*, 240 F.3d at 917. Nor is counsel required to present every non-frivolous argument. *Dell v. United States*, 710 F.3d 1267, 1282 (11th Cir. 2013).

Furthermore, a § 2254 Petitioner must provide factual support for his or her contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir.1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012).

## V. Discussion

In **Claim 1**, Petitioner alleges that the trial court erred by allowing Nurse Stabile to testify that the alleged victim's emotional state was consistent with that of

11

other rape victims. [ECF No. 1 at 5]. In **Claim 3**, Petitioner argues that his trial

counsel was ineffective when challenging Nurse Stabile's testimony at trial. [*Id*. at

7].

After Nurse Stabile testified to her training, education, and experience as a

sexual assault nurse, the state conducted the following direct examination:

**Prosecutor**: Uh, why was [M.M.] at the emergency room?

**Nurse Stabile**: Uh, for an alleged, uh, sexual assault and injury, other injuries.

**Prosecutor**: Okay, and what was her emotional state while in the emergency room?

**Nurse Stabile**: Uh, according to my notes that she was awake, alert, and orientated, but she was also very tearful.

**Prosecutor**: What did you do to treat M.M.?

**Nurse Stabile**: Uh, when she first came in, uh, we did treat for her injuries prior to anything else, so she was wrapped in shroud to contain any, uh, cross contamination or, uh, any possible evidence, and she was taken to CAT Scan where she had a CAT Scan of her head and neck.

**Prosecutor**: And have you treated other rape patients?

**Nurse Stabile**: Yes, ma'am.

**Prosecutor**: Approximately how many?

**Defense counsel**: Judge, may we approach on this?

**The Court**: Sure.

(Bench Conference)

12

**Defense counsel**: Judge, uh, I am going to object to, uh, bolstering the witness, uh, and talking about how many other cases. She's established that the nurse is an LPN, that she's got training and, uh, going into the how many times she's done this and so forth, I believe is bolstering, Your Honor.

**Prosecutor**: It's predicate questions because I'm going to ask her if her emotional state was consistent with, uh, with other rape victims that she's seen.

**Defense counsel**: And that is, I - I will object to that as well. That she's an LPN, she's - she can testify as to her observations of the physical, uh, state of this, uh, victim, however, I –

**The Court**: I - I know there is case law and I think I had a case with Ms. Craft where a P.H.D. psychologist came in and talked about, uh, they can't testify in this case, this victim was raped, but they can testify that their behavior and demeanor was consistent with people that have been through that trauma.

**Defense counsel**: Dr. Dikel –

**The Court**: Dr. Dikel, that's –

**Defense counsel**: (indiscernible - talking over each other) –

**The Court**: – it exactly.

**Defense counsel**: – DCA and that was once the expert witness was established as a mental health expert. This is not a mental health expert.

**The Court**: [Prosecutor]?

**Prosecutor**: Well, I think she's established that, you know, she's worked in the emergency room for ten years. She's about to tell you how many of these cases she did, and she also has specialized training in the sexual assault.

**The Court**: Okay. I - I think I understand your objection, but I think it's a little premature because I have to give her a chance to –

13

**Defense counsel**: Yes, sir.

**The Court**: – if she can, establish a predicate for her background, training, and experience to offer that type of opinion.

**Defense counsel**: Yes, sir.

**The Court**: Okay?

(End of Bench Conference)

[T. 283-85]. Nurse Stabile's testimony continued as follows:

**Prosecutor**: Thank you, Ms. Stabile. Oh, I was asking you, uh, have you treated other, uh, rape patients –

**Nurse Stabile**: Yes.

**Prosecutor**: As part of your job?

**Nurse Stabile**: Yes, ma'am.

**Prosecutor**: Approximately how many?

**Nurse Stabile**: Anywhere between 25 to 50, I don't know the exact number.

**Prosecutor**: And was [M.M.]'s emotional state consistent with, uh, the other patients, uh, that you've seen with the of complaining with the same thing.

**Nurse Stabile**: Uh –

**Defense counsel**: Judge, I renew my objection.

**The Court**: Overruled.

**Nurse Stabile**: Not that I - I - can you repeat that, I'm sorry.

14

> **Prosecutor**: Was her emotional state consistent with what she was alleging, uh, occurred to her?
>
> **Nurse Stabile**: As being tearful, yes.

[T. 286-87].

Nurse Stabile's direct examination continued regarding the "rape kit" and its content as it related to the case in trial [T. 287-88], and concluded as follows:

> **Prosecutor**: Oh, what complaints did the victim have in the emergency room?
>
> **Nurse Stabile**: Uh, according to the notes that, uh, she was alleging that she was a victim of a sexual assault. Also, that she was thrown from a moving vehicle and had hit her head. She was complaining of, uh, pain to the back of her head.
>
> **Prosecutor**: And what was she prescribed for treatment?
>
> **Nurse Stabile**: Uh, she was given a CAT Scan of her head and neck and – also, uh, I believe that was it. And then, uh, we had done the kit for her.

[T. 288-89].

On cross-examination, Nurse Stabile testified that she performed the rape kit and did not see "any tearing" or any obvious injuries on the victim. [T. 293]. The following exchange next took place:

> **Defense counsel**: You indicated in response to a question you said you've examined 25 to 50 rape patients, is that correct?
>
> **Nurse Stabile**: Roughly.
>
> **Defense counsel**: Okay.

15

**Nurse Stabile**: To be honest with you, I couldn't give you an exact number.

**Defense counsel**: That's fine. Uh, you were asked was [M.M.'s] emotional state consistent with that of a rape victim. And is it accurate to say that your response was, "She was tearful."

**Nurse Stabile**: Yes, sir.

**Defense counsel**: Was that it? Was there any other indication to you that she was suffering from any type of emotional trauma?

**Nurse Stabile**: Not that I can recall.

**Defense counsel**: The information that you just – you work with the information that is given you, correct?

**Nurse Stabile**: Yes.

**Defense counsel**: So you don't speculate, you simple have a series of procedures which you follow, is that accurate?

**Nurse Stabile**: Yes, sir.

**Defense counsel**: Okay. You were told that this victim was thrown from a vehicle, is that correct?

**Nurse Stabile**: Yes, sir.

**Defense counsel**: Did you observe personally any injuries consistent with being thrown from a moving vehicle?

**Nurse Stabile**: That she did have a hematoma to the back of her head.

**Defense counsel**: Okay, and that's it?

**Nurse Stabile**: As far as I can recall.

**Defense counsel**: Okay. Was she admitted to the hospital to your knowledge?

16

**Nurse Stabile**: No, she was not. She was discharged from the emergency department.

**Defense counsel**: And from your personal observation, she was oriented in all spheres?

**Nurse Stabile**: Yes, sir.

[T. 295-96].

Errors of state evidentiary law are not a basis for federal habeas relief unless they result in constitutional error. "[F]ederal courts will not generally review state trial courts' evidentiary determinations." *Taylor v. Sec'y, Fla. Dep't of Corr.*, 760 F.3d 1284, 1295 (11th Cir. 2014). Habeas relief is warranted only when the error "so infused the trial with unfairness as to deny due process of law." *Id.* (citation omitted).

Florida courts have deemed testimony similar to Nurse Stabile's testimony admissible where the expert's pure opinion testimony is based on training and experience, rather than a particular syndrome. In *Oliver v. State*, 977 So. 2d 673, 677 (Fla. 5th DCA 2008), the appellate court concluded the testimony was admissible where the expert testified as to typical behaviors that he had seen in victims of sexual abuse, after making clear that the behaviors were not part of a syndrome. *See also Torres v. State*, 999 So. 2d 1077, 1078 (Fla. 4th DCA 2009) (expert testimony admissible where the expert provided "his opinions about victims of child molestation derived from his own personal experiences in working on thousands of cases.").

17

Nurse Stabile's testimony that the victim was "tearful," which was similar to victims of sexual assault that Nurse Stabile had treated in the past, was based solely on her observation of the victim and her experience treating other rape victims. She did not testify that the victim was suffering from a particular syndrome. As a result, the trial court did not err in admitting her testimony. *See Torres*, 999 So. 2d at 1078; *Oliver*, 977 So. 2d at 677. Because the trial court's ruling was consistent with applicable state law, it clearly did not deprive Petitioner of due process of law. *See Taylor*, 760 F.3d at 1295.

To the extent Petitioner argues that defense counsel failed to adequately challenge Nurse Stabile's testimony, his claim also fails. Questioning a witness is a matter of trial strategy. *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). Claims based on counsel's failure to adequately cross-examine a witness are denied when the petitioner fails to articulate the possible impact of additional questioning. *Id*. Even assuming counsel failed to lodge a proper objection, Petitioner cannot establish prejudice because the underlying trial court ruling on the admissibility of Nurse Stabile's testimony was not improper. Counsel is not ineffective for failing to raise non-meritorious issues. *Chandler*, 240 F.3d at 917. Nor is counsel required to present every non-frivolous argument. *Dell v. United States*, 710 F.3d 1267, 1282 (11th Cir. 2013).

In light of the foregoing, the trial court's rejection of Claims 1 and 3, affirmed

18

by the appellate court, is not contrary to or an unreasonable application of federal constitutional principles. As such, it should not be disturbed here. *See Williams*, 529 U.S. at 413.

Under **Claim 2**, Petitioner alleges that the trial court erred by preventing defense counsel from eliciting from the victim on cross-examination that she was unable to work in this country because she was a Honduran citizen, that she was a supporting herself as a prostitute, and that she knew Petitioner because he was one of her clients. [ECF No. 1 at 6].

On cross-examination, defense counsel asked if the victim if she was a U.S. citizen and if she could work legally in the United States. [T. 235]. The prosecutor objected to the relevance of each question and the trial court sustained the objections. [*Id.*]. The parties approached for the following bench conference:

**Defense counsel**: Judge, uh, this woman has never worked since she's been here.

**The Court**: So?

**Defense counsel**: And she very well made her living, she has income. I believe that she has, uh, all I want to do is elicit the fact that she has never worked legally here. Uh, she's a **prostitute**, Judge.

**Prosecutor**: Says who? You?

**Defense counsel**: My investigator. I mean, I'm not going to say that. I just want to elicit testimony as to whether or not she has an income.

**The Court**: Okay, first of all, it is completely irrelevant to material issues in this case to the extent that it had any remote relevance under

19

90.403 balancing test. Its slight probative value would be substantially outweighed by the danger of unfair prejudice. The fact of the matter is, is that if you are, uh, a Jupiter Island socialite, or whether you are an illegal immigrant prostitute, you enjoy the same protections of the law-

**Defense counsel**: Agree.

**The Court**: - and that no one can go and rape another human being.

**Defense counsel**: Absolutely.

**The Court**: - because of their social status, their background. So those issues would be totally improper to even interject into this trial and to have the jury consider.

**Defense counsel**: Judge, for the record, I understand the law regarding rape shield. I understand absolutely, uh, any whether or not you're a socialite from Jupiter Island or an illegal immigrant, we all are duly protected under the law.

**The Court**: Okay.

**Defense counsel**: The defense is that there was a consensual encounter here and that it was based on necessity on her part for money. And that is (indiscernible) the record, Your Honor. You've made your ruling and I will proceed.

**The Court**: Okay. Do you want to proffer this –

**Prosecutor**: (Indiscernible - talking over each other) –

**The Court**: - out of the presence –

**Prosecutor**: - feel free to ask her if it's consensual. I think the fact that he had to chase her down with a gun would probably belie that, but he's certainly welcome to ask those questions.

**Defense counsel**: I don't want to - I - you made your objection. I think the Judge, uh, made his ruling, right?

**The Court**: But you, uh, are you withdrawing your objection?

**Prosecutor**: No. I - I - I don't think –

**The Court**: But –

**Prosecutor**: (indiscernible - talking over each other).

**The Court**: you just said –

**Prosecutor**: I think he's trying to interject that without evidence of that and - and, uh, I - I think it would be completely improper even if, uh, even if she were, so, no, I'm not withdrawing my objection, not at all.

**The Court**: Okay. You can ask: Was it consensual? Okay?

**Defense counsel**: Judge, uh, I (indiscernible) if there is, I did have one bit of evidence. I'm not, this is not a bad faith (indiscernible) out of nowhere kind of last ditch effort. There was an - there was a suggestion that [M.M.] has met him before and they - I will just, uh, as far as asking her if this is consensual, uh, that's where I'm (indiscernible) is: Have you met him before? And in fact, this was consensual. So –

**The Court**: Okay.

**Defense counsel**: - that's it.

**The Court**: I mean, we can cross that bridge when we get to it.

**Defense counsel**: Yes, sir.

**The Court**: I mean, maybe the Defendant is going to take the stand under oath and say she's a prostitute and this was consensual, but that might open the door to –

**Defense counsel**: I think –

**The Court**: - other incidents.

**Defense counsel**: - it would, Judge.

21

**The Court**: Which just kind of highlights the tenuous nature of the inquiry.

**Defense counsel**: Yes, sir.

(End of Bench Conference)

[T. 235-38]. Defense counsel continued the cross-examination, but never asked the victim questions about her work experience in the United States or sexual history. [T. 238-47].

As is indicated above, "[F]ederal courts will not generally review state trial courts' evidentiary determinations." *Taylor*, 760 F.3d at 1295. Habeas relief is warranted only when the error "so infused the trial with unfairness as to deny due process of law." *Id.* (citation omitted).

In Florida, "[r]elevant evidence is evidence tending to prove or disprove a material fact" and is "admissible, except as provided by law." Fla. Stat. §§ 90.401, 90.402. However, relevant evidence is not admissible "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." Fla. Stat. § 90.403. In Petitioner's case, the trial court agreed with the state that evidence regarding the victim's work experience was not relevant. *See* [T. 235]. The trial court also concluded that any probative value of the victim's alleged profession as a prostitute, was substantially outweighed by the risk of unfair prejudice. *See* [T. 236].

22

The Florida courts have routinely deemed evidence that a rape victim is a prostitute inadmissible. In *Esteban v. State*, 967 So. 2d 1095, 1098 (Fla. 4th DCA 2007), the Fourth DCA held that the rape victim's alleged reputation as a prostitute was not relevant as it did "not tend to prove a material fact in the case." *See also Carlyle v. State*, 945 So. 2d 540, 543 (Fla. 2d DCA 2006) (holding that "evidence of the victim's prior arrest for prostitution and her admission that she had acted as a prostitute in the past" was inadmissible in a sexual battery trial to establish that the victim consented to sex with the defendant.).

In this case, at best, defense counsel simply said that there was "a suggestion" that the victim had met Petitioner previously. [T. 238]. He did not contend that there was a suggestion that the victim was a prostitute, much less that she was acting as one at the time she was abducted at gun point and thrown violently into a car. *See Robinson v. State*, 575 So. 2d 699, 702 (Fla. 1st DCA 1991) (defendant failed to proffer evidence he sought to elicit). In *Robinson*, the court stated that the evidence of the violence directed at the victim weighed heavily against the contention that the victim's reputation as a prostitute would bear on an issue of consent. *Id.* at 703. In this case, the trial court properly excluded any reference to the victim's sexual past where the state presented evidence from multiple witnesses that the Petitioner forced the victim into his car at gun point.

The trial court's rejection of this claim, affirmed by the appellate court, is not

23

contrary to or an unreasonable application of federal constitutional principles. As such, it should not be disturbed here. *See Williams*, 529 U.S. at 413.

In **Claim 4**, Petitioner alleges that trial counsel was ineffective in failing to investigate and present evidence or witnesses to support the Petitioner's version of events. [ECF No. 1 at 9-10]. Petitioner alleges that prior to trial he told his attorney "what really happened," specifically, that earlier in the day he met a man in a hotel room to sell him drugs. [*Id.* at 9.]. The man was accompanied by the victim. [*Id.*]. While Petitioner was in the bathroom, the victim stole some of the illegal drugs from Petitioner's bag and left. [*Id.*]. Petitioner left the hotel, got in his car, and started looking for the victim. [*Id.*]. When he located her on the street, she began running. [*Id.*]. He got out of his car, holding his cell phone rather than a gun, and asked her to return the drugs. [*Id.* at 9-10]. She agreed to get into his car to discuss the situation. [*Id.*]. He drove around and asked her questions about the drugs. [*Id.*]. She responded by making sexual advances, which he rejected. [*Id.*].

Federal habeas corpus petitioners asserting claims of ineffective assistance, based on counsel's failure to call a witness (either a lay witness or an expert witness), must satisfy the prejudice prong of *Strickland* by naming the witness, demonstrating the witness was available to testify and would have done so, setting out the content of the witness' proposed testimony, and showing the testimony would have been favorable to a particular defense. *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir.

24

2010). *See also Reed v. Sec'y, Fla. Dep't of Corr.*, 767 F.3d 1252, 1262 (11th Cir. 2014) (holding federal habeas petitioner who failed to show an uncalled witness was available to testify at the time of trial failed to satisfy prejudice prong of *Strickland*).

"A decision whether to call a particular witness is generally a question of trial strategy that should seldom be second guessed." *Conklin v. Schofield*, 366 F.3d 1191, 1204 (11th Cir. 2004). *See also Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995). A petitioner cannot maintain an ineffective assistance of counsel claim "simply by pointing to additional evidence that could have been presented." *Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1324 (11th Cir. 2002).

Petitioner merely provides speculative evidence that unnamed witnesses would have testified to his version of events. Speculation about what witnesses could have said is not enough to establish prejudice. *See generally White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992). The only witnesses who could support Petitioner's story were Petitioner and the victim. The victim testified at trial and Petitioner declined to take the stand. Even assuming counsel was deficient for failing to investigate and then call witnesses to testify at trial, Petitioner is not entitled to relief as he has not demonstrated here that, but for counsel's purported deficiency, the outcome of trial would have been different.

The state trial court's rejection of this argument in the Rule 3.850 proceedings, affirmed on appeal, was not contrary to or an unreasonable application of federal

constitutional principles. As such, it should not be disturbed here. *See Williams*, 529 U.S. at 413.

Under **Claim 5**, Petitioner alleges that trial counsel was ineffective in misadvising Petitioner to decline his right to testify in his own defense. [ECF No. 1 at 12-14].

It is well-settled that a criminal defendant has a fundamental constitutional right to testify on his or her own behalf at trial. *Rock v. Arkansas*, 483 U.S. 44, 49-52 (1987); *United States v. Teague*, 953 F.2d 1525, 1532 (11th Cir. 1992) (*en banc*). This right is personal to Petitioner and cannot be waived by the trial court or defense counsel. *United States v. Teague*, 953 F.2d at 1532. An argument that a defendant's right to testify was violated by his trial counsel requires analysis under *Strickland v. Washington,* 466 U.S. 668 (1984). *See Teague*, 953 F.2d at 1534.

Under the first prong of the *Strickland*, an attorney is deficient if counsel refused to accept the defendant's decision to testify and refused to call him to the stand to testify or, alternatively, where counsel never informed the defendant of his right to testify and that the ultimate decision belonged to the defendant alone. *Teague*, 953 F.2d at 1532. The prejudice *Strickland* prong requires a showing that, but for counsel's deficiency, the outcome of Petitioner's trial would have been different. *Teague*, 953 F.2d at 1532. The following exchange occurred at trial:

> **Defense Counsel**: Your Honor, the Defendant, the Defense will not be putting on a case and [Petitioner], uh, will not be taking the stand,

26

Judge.

**The Court**: Okay. Uh, [Petitioner], you understand that you have a right to remain silent?

**Petitioner**: Yes.

**The Court**: Okay. And that right belongs to you and not to anyone else, including your attorney. Do you understand that?

**Petitioner**: Yes, sir.

**The Court**: Now you should, uh, the attorney can give you his advice and opinion and, uh, you should put great weight in what [defense counsel] tells you, he is a very experienced attorney, but ultimately the decision whether to testify or remain silent belongs to you and only to you. Do you understand that?

**Petitioner**: Yes, sir.

**The Court**: Okay. If you, uh, and again, you have the constitutional right to remain silent. If you decide not to testify, the Court will instruct the jury that the fact that you did not testify is not to be considered by them in any way whatsoever in their verdict. If you want to testify, of course, you can. If you do testify, the Court will instruct the jury that your testimony is to be considered like the testimony of any other witness. If you testify, the State will have an opportunity to question you or cross-examine you and they may also ask if you are a convicted felon and how many times you have been convicted of a felony crime. Do you understand that?

**Petitioner**: Yes, sir.

**The Court**: Having discussed this with your lawyer, have you reached your own personal decision on whether or not you want to testify or not?

**Petitioner**: I don't want to testify.

**The Court**: You do not want to testify?

**Petitioner**: No, sir.

**The Court**: Okay, and I find that decision to be freely and voluntarily made, intelligently made with the advice and consent of his counsel. So do you want to rest formally in front of the jury?

**Defense Counsel**: Yes, sir.

[T. 379-80].

Here, the record reveals that, after consultation with counsel, after the court advised Petitioner of his right to testify and the ramifications of testifying, Petitioner at a minimum acquiesced, under oath, with the defense strategy not to testify. *See* [T. 379-80]. There is no indication that Petitioner was subject to some sort of coercion or undue influence. It cannot be assumed that Petitioner's decision not to testify or acquiescence to a trial strategy to not testify was anything but voluntary. *See Lambrix v. Singletary*, 72 F.3d 1500, 1508 (11th Cir. 1996)

Applying a *de novo* review, Petitioner's argument under Claim 5 fails. *See, e.g.*, *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010); *Hittson v. GDCP Warden*, 759 F.3d 1210, 1248 (11th Cir. 2014); *Trepal v. Sec'y, Fla. Dep't of Corr.*, 684 F.3d 1088, 1109-10 (11th Cir. 2012).

### VI. Cautionary Instruction Re *Clisby* Rule

Finally, the Court has considered all of Petitioner's claims for relief, and arguments in support. *See Dupree v. Warden*, 715 F.3d 1295, 1298 (11th Cir. 2013) (citing *Clisby v. Jones*, 960 F.2d 925 (11th Cir. 1992)). For all of his claims,

Petitioner has failed to demonstrate how the state courts' denial of the claims, to the extent they were considered on the merits in the state forum, were contrary to, or the product of an unreasonable application of, clearly established federal law. To the extent they were not considered in the state forum, as discussed in this Report, none of the claims individually, nor the claims cumulatively, warrant relief. Thus, to the extent a precise argument, subsumed within any of the foregoing grounds for relief, was not specifically addressed here or in the state forum, all arguments and claims were considered and found to be devoid of merit, even if not discussed in detail here.

## VII. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011). To determine whether an evidentiary hearing is needed, the question is whether the alleged facts, when taken as true, are not refuted by the record and may entitle a petitioner to relief. *Schriro v. Landrigan,* 550 U.S. 465, 474 (2007); *Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1318-19 (11th Cir. 2016). The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [petitioner's] claim[s] without further factual development," *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing is not required.

## VIII. Certificate of Appealability

29

A prisoner seeking to appeal a district court's final order denying his or her petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009). This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Upon consideration of the record, this court should deny a certificate of appealability. Notwithstanding, if Petitioner does not agree, he may bring this argument to the attention of the District Court Judge in objections.

## IX. Conclusion

Based upon the foregoing, it is recommended that:

1. the federal habeas petition be DENIED;

2. a certificate of appealability be DENIED; and,

3. the case CLOSED.

Objections to this report may be filed with the District Court Judge within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar Petitioner from a *de novo* determination by the District Court Judge of an issue

covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the District Court Judge, except upon grounds of plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1).

SIGNED this 20th day of May, 2020.

UNITED STATES MAGISTRATE JUDGE

cc:    Robert Lee Kenon, Jr., *Pro Se*
       DC# 546977
       Everglades Correctional Institution
       Inmate Mail/Parcels
       1599 SW 187th Avenue
       Miami, FL 33194

       Georgina Jimenez-Orosa
       Attorney General Office
       1515 N Flagler Drive, Suite 900West Palm Beach, FL 33401-3432
       Tel: 561-837-5000
       Fax: 561-837-5099
       Email: CrimAppWPB@MyFloridaLegal.com